GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. JAMES R. SENN.

Decided January 26, 1910.

**1.—Master and Servant—Explosion of Boiler—Negligence—Proof.**

In a suit for damages for personal injuries caused by the explosion of a boiler, it is incumbent on the plaintiff not only to prove that the explosion was due to a defective boiler, but also by direct or circumstantial evidence that the defective condition was capable of being known to defendant upon the proper performance of the duty of inspection.

**2.—Same.**

In a suit for damages caused by the explosion of a boiler, it being shown by the testimony that the explosion was due either to low water in the boiler or to a defective boiler, and the jury having discarded the theory of low water, circumstantial evidence considered, and held sufficient to support a finding by the jury that the explosion was due to a defective condition of the boiler, and that said condition could and would have been discovered by a proper inspection.

**3.—Same—Negligence—Charge—Practice.**

Where the court required the jury to find that the defendant was guilty of negligence in putting plaintiff in control of an engine with a defective boiler before they could render a verdict for plaintiff, the charge was sufficient on the subject of negligence, and the defendant could not complain of the same in the absence of a request that the jury be instructed in any particular detail of the subject.

Appeal from the Fifty-Seventh Judicial District, Bexar County. Tried below before Hon. A. W. Seeligson.

*Baker, Botts, Parker & Garwood, D. C. Bolinger* and *W. F. Ezell,* for appellant.

*Perry J. Lewis* and *H. C. Carter,* for appellee.

JAMES, CHIEF JUSTICE.—An action for damages for personal injury. The amended petition of Senn alleged that while he was act-

ing as engineer on one of defendant's freight trains, and when it reached a point about seven miles west of Uvalde, the boiler of the engine exploded, and he sustained thereby serious and · permanent injury. "That the boiler in its bolts, stays and the various parts by which the boiler was held together, was defective, unsafe and unfit and dangerous, and were too weak to stand the strain which was necessarily placed upon them," and by reason of such dangerous and unsafe condition the boiler exploded, and that it was negligence on the part of defendant to have and permit said boiler to be and remain in said condition.

The petition alleged that he was carrying no more than the usual and' proper amount of steam, and that the boiler was supplied with the usual safe and proper quantity of water, and denied that plaintiff permitted the water in the boiler to become too low and to thereby burn the crown-sheet of the boiler, as alleged in defendant's answer. Also alleged that the defective and unsafe condition of the boiler was hidden from his view while he was operating the locomotive, and that he did not know of its said condition; and that defendant negligently failed to make a proper and careful inspection of same to the end that its condition might be discovered, which, if such inspection had been made, would· have discovered its defective and unsafe condition, which acts of negligence led to the explosion. That the explosion caused the locomotive to overturn, and plaintiff received the injuries which the petition sets forth.

The demurrers contained in the answer need not be noticed, as the brief presents no question in reference to them. There was a general denial, and a special denial that defendant failed to properly inspect. The answer also charged that the explosion was caused by plaintiff's conduct and want of care in failing to keep the engine properly supplied with water, and in permitting the water in the boiler to get below the top of the crown-sheet while the engine had a hot fire in the fire-box; and also negligent in this, that after permitting the water to get below the crown-sheet and after allowing the crown-sheet to get extremely hot he then negligently forced water into the boiler, which was converted immediately into steam as soon as it reached the hot crown-sheet, and on this account the sudden increase of pressure in the boiler blew the crown-sheet down and caused the explosion. A verdict of $15,000 was returned.

The first assignment of error complains of the refusal of a peremptory instruction. The basis for this complaint is embodied in one proposition as follows:

"In an action by an employe for injuries caused by the explosion of the fire-box of the engine which he was operating, the mere happening of the accident is insufficient to raise a presumption of negligence on the part of the company, and where there is no evidence, as in this case, which tends to show that the explosion of the fire-box was due to any negligence on the part of the railroad company, it is the duty of the court to instruct a verdict for defendant. The court, therefore, erred in refusing to give appellant's special charge No. 1, which was, in effect, a peremptory instruction to find in its favor."

The proposition, therefore, is that there was no evidence .which tended to show that the explosion was due to any negligence of defendant. The argument is that the testimony shows that explosions of this kind result from one of· two causes, low water in the boiler, or defective boiler, and that plaintiff having proved nothing except the explosion, and, by his own testimony, that the water did not get too low, the jury should have been instructed as asked, for the reason that such state of evidence does not establish negligence on the part of the defendant. Counsel are mistaken as to the above being all the evidence before the jury, as we shall hereinafter explain.

The principles of law which govern cases like this between master and servant are that it is incumbent on the servant to prove more than that the explosion took place and that it was due to a defective boiler. He must go further and show that the defective condition of the boiler was due to negligence of defendant. To simply establish that the explosion came from some defect in the boiler, would not be enough, because it could come from a. latent defect, which is one that the exercise of ordinary care can not discover. Plaintiff must produce further testimony, direct or circumstantial, from which the jury will be able to say that the explosion was caused by a defective boiler, and its defective condition was capable of being known to defendant upon a proper performance of the duty of inspection which it, as master, owes to its servant.   .

The rule applicable as between carrier and passenger is not applicable. Nor is this rule any different from that ·declared in the case of McCray v. Galveston, H. & S. A. Ry., 89 Texas, 168, which was a master and servant case, but there the very circumstance of the occurrence was such as was held to carry with it evidence of culpable negligence of the master. This court has expressed itself on this subject generally in Galveston, H. & S. A. Ry. v. Garven, 50 Texas Civ. App., 245 (109 S. W., 426).

It is clearly the result of all the testimony that the explosion was due either to low water in the engine, for the consequences of which plaintiff would have been responsible, or to a defective boiler. Notwithstanding the great volume of opinion evidence which points to low water at the time of the accident as the cause, there can be no question that the jury had before them ample testimony to support a finding by them that there was no such condition, therefore no such cause. We think it needless to relate the testimony and the circumstances in this record which warranted the jury in making, as they must have done, such finding.

The next step is to gather from the evidence, if possible, what the defect or defective condition of the appliance was, since the jury had the right to find and must have found that from such cause alone the explosion came· about. There was evidence in the color and appearance of the metal and pit mark indentations disclosing that the crown-sheet had been subjected to excessive heat which tended to weaken it; also evidence disclosing that the heads of the crown bolts had been burnt off, particularly on the front and where a number of the witnesses by their opinion located the place where the break

occurred; also disclosing four broken stay bolts; also disclosing some cracks in the metal of the side sheets. Much of the testimony bearing on these defects is found in the statements of the witnesses for appellant, for each and all of these defects were consistent with and tended to prove appellant's main contention at the trial, which was that the explosion was due to the effect of heat in the absence of a sufficient supply of water, all of the evidence showing that if the water was allowed to get too low just such effects were likely to be produced. A number of experts, therefore, testified that it was evident to them that this explosion resulted from low water.

But the low water theory was laid aside by the jury, and this cause of the explosion being out of the way, the same effects were utilized by appellee by the aid of testimony going to show that they weakened the boiler and made it insufficient to resist the ordinary pressure, and that they existed prior to the sending out of the engine on this trip, and that a proper inspection would have prevented this occurrence.

As to the color or discoloration of the metal, the witness Mooney testified that the blue color of the crown sheet was an indication of the sheet having been heated to a very high temperature; also that by overheating this boiler steel that is used in crown sheets it weakens the sheet, the sheet loses its tensile strength if you get it up to a white heat. This was an oil burner and it was proved that it makes an intense white heat. A witness, Spencer, and other witnesses, testified that the crown-sheet had pit marks caused by overheating and sediment which tended to weaken the metal, and he testified further: "As to whether that crown-sheet is safe or not safe, it is according to the pressure you carry on it; over 200 pounds pressure it is not safe, I wouldn't have it." Plaintiff testified that he was working about 200 pounds of steam, which is the usual and customary steam pressure on engines of that class, and that this was a safe steam pressure. The evidence showed that the sheet was torn by the break. It seems to us that it is not necessary for us to state anything further from the evidence in this connection, for if the above was accepted by the jury, they had the right to conclude from it that the crown-sheet was defective in resisting power to the point that it was dangerous to subject it to the ordinary pressure used in operating the engine; and further, that this was not, as a matter of law, a hidden condition. In this place we should add that this condition of the crown-sheet, which, if it existed, clearly was shown to have resulted from the action of intense heat in connection with low water, did not originate during this trip, if the jury believed certain of the testimony. The defendant's witness, Ney, testified: "If the crown-sheet had been properly covered by two and a half gauges of water (plaintiff testified he had this) and they had been using the proper quantity of steam (which fact was also testified to) and she had exploded it would have been bound to be from some defect in the boiler. It ought to be from some defect in the boiler, if there was no low water."

As to the crown bolts, stay bolts and cracks, we shall quote from several of the witnesses. The witness Hellman stated: "At the time this boiler exploded there were four broken stay bolts in the boiler.

. . . We found these two on the right and two on the left side; I don't remember the locations. I did not make a note of it. One end of these bolts was broken from the outside sheet like they always do, just like we find them when we make the hydraulic test; we found the usual break, the break that we commonly found we found in four of those stay bolts. . . . I could tell that these four broken stay bolts were broken prior to the explosion because the appearance of the bolts showed it, the ends being corroded, that is what they call alkalied over, they were scaled and showed that they were old breaks. Those broken stay bolts there were plainly observable to any experts examining that boiler, and a proper test would have disclosed those broken stay bolts. . . . If we had known that those stay bolts were broken, we would have taken them out."

The defendant's witness Bryan testified as follows: "I found three broken stay bolts in this fire-box that were not broken by this explosion. . . . With reference to the location of the three stay bolts that I found broken, I found one bolt on the right side sheet about the fourth row from the top and the third bolt from the flue sheet, and then two in the left side sheet in the second row from the top and the third bolt from the flue sheet, and then two in the left side sheet in the second row from the top and the thirteenth and eighteenth bolts, commencing at the flue sheet and counting your bolts one, two and so on." Mr. Mooney testified that a broken bolt would tend to weaken the fire-box if it was around that part of the boiler; it tends to weaken wherever a bolt is required, and our purpose is to replace every broken bolt.

There was nothing absolutely certain as to where the fire-box gave way first. Some witness advanced the opinion by examining it, that the crown-sheet gave way at the front end where it joined on to the flue sheets. As the jury inspected the fire-box and saw it for themselves as evidence, their conclusions on the subject are not known. The general trend of the testimony is that the break, or giving way, occurred in the forward end of the fire-box.

As to the condition of the crown bolts, the witness Stevens testified: "If the bolt heads get burned off by the heat it certainly has an effect on the crown-sheet, because it weakens it. If a large number of these crown bolts get their heads burned off, the result will be that the sheet is liable to come down." The witness Ney testified: "I made an examination to determine the cause of the explosion. It looked to me like the cause of it was the crown-sheet was overheated without water, the crown bolts, the heads of them were all burned off; in fact, all burnt off on the front end, in front of the crown-sheet." Recurring to the testimony of plaintiff, which the jury has credited, the conditions that existed while he had charge of this engine on this trip, did not cause these bolt heads to be burned off, and such condition was open to view, and was there prior to the time this engine was delivered to plaintiff. It is observable also that the witnesses seem to agree in their opinions that the breaking took place in the forward part of the fire-box, though none profess to be exact about the point.

As to cracks, it was shown there were a few of them which had been

repaired in the usual way by plugging, and at least one that had not been. Witnesses testified that cracks tend to weaken the metal, which is something which everyone knows is so, where the crack is; but the evidence by the witnesses seems to be that there was no breaking at any crack; still if cracks weakened the sheet, it may be that this was a cause of the sheet giving way.

The crown sheet and the side sheets were composed of one piece of metal. Its condition, as shown by the foregoing and much other testimony of like kind, was weak and defective in various respects. It had previously been subjected to extreme heat, to such a degree that it was thereby discolored and to some extent weakened, one witness stating that it was so weakened by this cause and by indentures made by pit marks that he did not consider it safe for a pressure more than 200 pounds, which plaintiff testified was about the pressure he was carrying. It seems to us that it would not be due care, as a matter of law, to furnish an engineer with an appliance unfit to stand a pressure of anything over 200 pounds when the usual pressure in operating the engine is approximate to that. Certainly, if the appearance of the metal itself gave notice such as above stated to one familiar with engines and boilers, an inspection by competent employes in that line would have had such matter suggested to them also, upon an inspection of it. Such notice would have suggested the propriety of a test with that defect in view, such as the hydraulic test, and it appears that no such or similar test was made before sending out this engine in that condition, though an inspection was testified to.

It is further clear that there was evidence that there existed other imperfections in this appliance which were in their nature apparent, and which weakened its resisting power, and which it was customary to remedy by inspection and repair between trips. We refer to the burnt-off heads of numerous crown bolts and the several broken stay bolts, which the jury were authorized to find were in this condition when this engine was sent out. If they caused or contributed to this accident, there can be no question that the jury had sufficient warrant in finding that defendant had failed, in this particular also, in its duty of inspection.

After following the brief of appellant we find ourselves unable to consider that because the evidence leaves the particular defect which caused this explosion uncertain, that no case is presented. We think in such a case that if, upon the whole evidence, a theory of fact could, consistently with the evidence, be said to exist, which would exonerate the defendant from negligence, plaintiff's case would fail for lack of proof. But nothing can be more clearly established than, in this case, the fact that plaintiff not having low water, this explosion came from a defective engine and from no other cause. It is not claimed that there was any latent defect, and the development of all the evidence obtainable from all sources shows no such thing as a latent defect and renders none probable, but various defects, all open and visible to ordinary inspection, and all in their effect tending in the direction of an explosion of the boiler by weakening its capacity for resistance. The jury were, we think, authorized to con-

clude and find that from the defective condition of the appliance in general, its weakened material, its burnt-off crown bolts, and its broken stay bolts, that it was unsafe for the purpose it was given plaintiff to use, and that its explosion was the result of such defective condition, and that defendant was guilty of negligence in this matter, and to such negligence plaintiff's injury was due. We, therefore, overrule the first assignment.

For the same reasons we overrule the assignments from three to nine, inclusive, and also the eleventh.

Appellant's second assignment complains of this paragraph of the charge: "If you believe from the evidence that on or about the 21st day of February, 1908, . . . the boiler of said locomotive exploded; and if you further believe from the evidence that the boiler of said locomotive was defective, as alleged by plaintiff in his petition, and that such defects, if any, in said boiler directly caused the explosion of said boiler, if you find it did explode; and you further believe from the evidence that such defects in said boiler, if any, were caused by defendant's negligence, and that such negligence, if any, directly caused the explosion of said boiler, . . . then I charge you that your verdict must be for the plaintiff."

The proposition is: "There was no evidence whatever showing or tending to show that all of the defects, as alleged in the petition, existed in the boiler at the time of the explosion, and the court's charge in submitting said issues to the jury was therefore misleading and not warranted by the evidence."

The allegation was as follows: "Plaintiff avers that said boiler and its bolts, stays and the various parts by which the boiler was held together, were defective, unsafe and unfit and dangerous, and were too weak to stand the strain which was necessarily placed upon them, and by reason of such defective, unsafe, dangerous and unfit condition, said boiler exploded and caused plaintiff to be injured as herein stated, and it was negligence on the part of defendant to have and permit said boiler to be and remain in such defective, dangerous, unfit and unsafe condition."

We agree with appellant's argument to the extent of holding that the submission by the court of an issue not raised by the evidence is error. Appellant bases this assignment upon the entire want of evidence that the bolts and stays were unfit, unsafe, defective and dangerous and too weak to stand the strain placed upon them, and adds: "Where is there one particle of evidence that there were any defects whatever in the boiler?" What we have said amounts to a definite finding that there was such evidence, and if this is correct it follows we must overrule this assignment. On this subject we may add that if plaintiff had alleged several defects in the boiler some of which were proved and one not, still it would not follow that the charge in the form of this one was error, necessitating a reversal as misleading. See Missouri, K. & T. Ry. v. Hay, 39 Texas Civ. App., 51 (86 S. W., 955), in which case the Supreme Court refused a writ of error. Moreover, it might be said that such a submission in those circumstances would be too onerous on plaintiff.

The tenth assignment complains of this paragraph of the charge:

"If you believe from the evidence that on or about the 21st day of February, 1908, the plaintiff was in the employ of the defendant as an engineer on one of its locomotives, and that on said date the boiler of said . locomotive exploded; and if you further believe from the evidence that the boiler of said locomotive was defective as alleged by plaintiff in his petition, and that such defects, if any, in said boiler directly caused the explosion of said boiler, if you find it did explode; and if you further believe from the evidence that such defects in said boiler, if any, were caused by defendant's negligence, and that such negligence, if any, directly caused the explosion of said boiler, if you find it did explode; and if you further believe from the evidence that by reason of such explosion of said boiler, if there was an explosion of said boiler, the plaintiff directly received any of the injuries alleged in his petition; and if you further believe from the evidence that the plaintiff was not guilty of contributory negligence; and if you further believe from the evidence that the plaintiff did not assume the risk, then I charge you that your verdict must be for the plaintiff."

·The proposition is that this authorized the jury to return a verdict for appellee without requiring them to find that appellant knew, or by the exercise of ordinary care would have discovered the defect, ·if there was any defect, which caused the explosion of the fire-box.    The charge required the jury to find, before finding for appellee, that defendant was guilty of negligence in respect to the defects.    This comprehended the subject of negligence of defendant in general.    Had it been desired that the jury should be instructed in any detail of this subject, such an instruction should have been asked.    Another proposition is that there was no evidence tending to support said issue, which we overrule in view of what has been stated in this opinion.

The twelfth complains of the amount of the verdict as excessive. There was testimony concerning plaintiff's injury which, if credited by the jury, fully warrants the verdict.    Judgment affirmed.

*Affirmed.*

Writ of error refused.